663 F.2d 178
 214 U.S.App.D.C. 1, Fed. Sec. L. Rep. P 97,713
 Mildred LIPSIG, et al.
v.
NATIONAL STUDENT MARKETING CORPORATION, et al.
Louis W. BIEGLER and Biegler Foundation, Appellants,
v.
POMERANTZ, HAUDEK, LEVY & BLOCK, a Partnership, et al.
(three cases).
Louis GARBER, et al.
v.
Cortes W. RANDELL, et al.
Domenick L. NATALE
v.
NATIONAL STUDENT MARKETING CORPORATION, et al.
 Nos. 78-1998, 78-1999 and 79-2000.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 13, 1979.
Decided Dec. 5, 1980.
 
 Frank J. Delany, Washington, D. C., with whom S. Churchill Elmore, Washington, D. C., was on the brief, for appellants.
 William E. Haudek, New York City, with whom Julius Levy and Stephen P. Hoffman, New York City, were on the brief, for appellees, Pomerantz, Haudek, Levy, and Block.
 James E. Tolan, New York City, with whom John Logan O'Donnell, Charles M. McCaghey, Bruce E. Pindyck and Christopher Brady, New York City, were on the brief, for appellees, National Student Marketing Corporation, et al.
 Ross O'Donoghue, Washington, D. C., entered an appearance for appellee, Michael Monroe.
 Before ROBINSON and MIKVA, Circuit Judges, and FLANNERY*, United States District Judge for the District of Columbia.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 This appeal emanates from consolidated class actions against National Student Marketing Corporation and others originating in the early 1970's on allegations of securities fraud perpetrated by dissemination of false and misleading information concerning National's financial condition.[1] A settlement in 1974 resolved the class claims against National, but left the potential liabilities of other parties open to future litigation.[2] In 1975, appellants Louis W. Biegler and the Biegler Foundation were joined as additional defendants.[3] The Bieglers counterclaimed, averring misconduct by the class plaintiffs and the law firms that respectively had represented the two factions settling, and seeking damages and vacatur of the settlement.[4] The District Court denied several procedural motions by the Bieglers and granted summary judgment dismissing the counterclaim.[5] Then, concluding that the Bieglers had prosecuted the counterclaim in bad faith, the court held that they should be made to pay the litigation costs and attorneys' fees incurred by the law firms in defending themselves against the countercharges.[6]
 
 
 2
 The District Court elucidated these dispositions in two separate opinions.[7] For the reasons the court comprehensively articulated,[8] which we deem faultless, we affirm the procedural rulings and the dismissal without further discussion. And perceiving no basis for upsetting the court's decision to award compensatory counsel fees,[9] we affirm its action in that respect as well. Because, however, of the importance in future litigation of the principles governing such awards, we add a brief elaboration.[10]
 
 
 3
 In pondering the propriety of an allowance of attorneys' fees to the law firms, the District Court was confronted by what has come to be known as the "American rule" on that subject.[11] That rule ordinarily requires parties to shoulder their own counsel fees and other litigation expenses absent statutory or contractual authority for an alternative allocation.[12] Over the years, however, the courts have carved out several narrowly defined exceptions,[13] by one of which "a court may assess attorney's fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons....' "[14] It was on this predicate that the District Court acted,[15] and we cannot say that it erred in its resolve to levy a fee assessment here.
 
 
 4
 As the Supreme Court has explained, "(i)n this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant."[16] Not surprisingly, then, "(t) he standards for bad faith are necessarily stringent,"[17] and the fee- shifting sanction is invocable only for some dominating reason of justice.[18] A party is not to be penalized for maintaining an aggressive litigation posture,[19] nor are good faith assertions of colorable claims or defenses to be discouraged.[20] But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto.[21]
 
 
 5
 In the case before us, the District Court made extensive findings of fact in the course of determining whether an allowance of attorneys' fees was justified.[22] The court characterized the record as "replete with convincing evidence of the Bieglers' bad faith both in initiating and prosecuting the counterclaim;"[23] it noted that "(t)he Bieglers (had) not attempted to contradict this evidence, to explicate their motives in bringing this action, or to justify the manner in which they prosecuted the claim."[24] But though, by the District Court's estimate, "the initiation of this action strongly suggests bad faith on the part of the Bieglers and alone may justify assessment of attorneys' fees,"[25] the court did not put its ruling on that basis. Instead, it concluded that "(t)o the extent that the record may be equivocal on (that) point, ... any doubt concerning their bad faith is removed when their conduct during litigation is considered."[26]
 
 
 6
 No useful purpose would be served by reiteration of the numerous factual findings which the court set forth in support.[27] It suffices to observe that there were findings that the Bieglers engaged in dilatory tactics during discovery and courtroom hearings,[28] consistently failed to meet scheduled filing deadlines,[29] misused the discovery privilege[30] and on at least two occasions "seriously misled the Court by misquoting or omitting material portions of documentary evidence."[31] The Bieglers urge us to take a different view of the record,[32] but we cannot say that the court's findings are clearly erroneous,[33] or that the court exceeded the bounds of its discretion in holding that they called for an award of compensatory attorneys' fees.[34]
 
 
 7
 The District Court ruled further that neither the nonfrivolous quality of the Bieglers' counterclaim nor even their possible good faith in bringing it foreclosed an allowance of counsel fees.[35] In the court's view, bad faith "does not require that the legal and factual bases for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy or mala fides, the assertion of a colorable claim will not bar the assessment of attorneys' fees against him."[36] Therefore, the court held, "even assuming good faith in the filing of the counterclaim other dilatory tactics during the litigation would justify the award of attorney's fees."[37]
 
 
 8
 We think the District Court was eminently correct in its reasoning. While the presence of merit in a claim or defense may well negate any notion of bad faith in its filing, it certainly cannot justify abuse of the judicial process in the methodology of its prosecution. What, then, we sustain today is "an award for general obstinacy unconnected with the merits of the case."[38] As the Supreme Court instructs, "(t)he bad faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith;"[39] rather, the Court has declared, "(i)t is clear ... that 'bad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation."[40] And like the First Circuit, "we do not agree ... that a party who offers a legitimate defense cannot have been obstinate in the process.... (I)ndeed, even a winner may have to pay obstinacy fees."[41]
 
 
 9
 The orders under review are affirmed. The case is remanded to the District Court for a determination of the amount of counsel fees appropriately to be awarded under the circumstances.[42]
 
 
 10
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 Fraud charges spawned seven civil suits by private parties in three separate federal judicial districts, and another by the Securities and Exchange Commission in the District of Columbia. This background is described in an opinion of the Judicial Panel on Multidistrict Litigation, which transferred the private-party actions to the District of Columbia for pretrial proceedings with the actions already pending here. In re National Student Marketing Litigation, 368 F.Supp. 1311 (1973). Three of the private-party suits were eventually consolidated and designated as class actions. See In re National Student Marketing Litigation, 445 F.Supp. 157, 159 (D.D.C.1978) (opinion on dismissal of counterclaim) (hereinafter cited as Counterclaim Opinion ). It was from the latter group that the present controversy stemmed
 
 
 [2]
 See In re National Student Marketing Litigation, 68 F.R.D. 151 (D.D.C.1974) (opinion approving settlement)
 
 
 [3]
 See Counterclaim Opinion, supra note 1, 445 F.Supp. at 159, 161. The Bieglers had been shareholders, and Louis W. Biegler a principal, in Interstate National Corporation. In 1969, Interstate was merged into National, in consequence of which the Bieglers acquired stock in National, some of which they later sold. Thus the Bieglers became members of the plaintiff class as recipients of National stock and potential defendants as sellers
 
 
 [4]
 See id. at 161-162 (describing the features of the counterclaim)
 
 
 [5]
 See id. at 163-168. See also note 6 infra
 
 
 [6]
 In re National Student Marketing Litigation, 78 F.R.D. 726 (D.D.C.1978) (opinion on award of attorneys' fees) (hereinafter cited as Fee Opinion). The court denied a similar award to National because of its relatively limited involvement in the counterclaim proceedings and because the court felt that all punitive and compensatory objectives were sufficiently served by the allowance to the law firms. Id. at 731 n.16. The court deferred ascertainment of the amount of the award to the firms pending appellate review. Id. at 731. Determining also that there was no just reason for delay, and acting pursuant to Fed.R.Civ.P. 54(b), the court directed entry of final judgment on the procedural motions, on the counterclaim and on the motions for counsel fees, id. at 732, thus making the rulings thereon immediately appealable. See generally 10 C. Wright & A. Miller, Federal Practice §§ 2653-2654 (1973)
 
 
 [7]
 Counterclaim Opinion, supra note 1; Fee Opinion, supra note 6
 
 
 [8]
 See Counterclaim Opinion, supra note 1
 
 
 [9]
 See Fee Opinion, supra note 6
 
 
 [10]
 What we say about the award of attorneys' fees applies equally to the assessment of other litigation expenses
 
 
 [11]
 See Fee Opinion, supra note 6, 78 F.R.D. at 728
 
 
 [12]
 Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247-257, 95 S.Ct. 1612, 1616-1621, 44 L.Ed.2d 141, 147-153 (1975); F. D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 126, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703, 712 (1974); Hall v. Cole, 412 U.S. 1, 4, 93 S.Ct. 1943, 1945-1946, 36 L.Ed.2d 702, 707 (1973)
 
 
 [13]
 See, e. g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra note 12, 421 U.S. at 257-259, 95 S.Ct. at 1621-1622, 44 L.Ed.2d at 153-154; Hall v. Cole, supra note 12, 412 U.S. at 4-7, 93 S.Ct. at 1945-1947, 36 L.Ed.2d at 707-708; Note, Attorney's Fees and the Federal Bad Faith Exception, 29 Hast.L.J. 319 (1977)
 
 
 [14]
 Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra note 12, 421 U.S. at 258-259, 95 S.Ct. at 1622, 44 L.Ed.2d at 154, quoting F. D. Rich Co. v. United States ex rel. Industrial Lumber Co., supra note 12, 417 U.S. at 129, 94 S.Ct. at 2165, 40 L.Ed.2d at 714. Accord, Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488, 501 (1980); Runyon v. McCrary, 427 U.S. 160, 183, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415, 432-434 (1976); Hall v. Cole, supra 12, 412 U.S. at 5, 93 S.Ct. at 1946, 36 L.Ed.2d at 707; Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 n.4, 88 S.Ct. 964, 966 n.4, 19 L.Ed.2d 1263, 1265-1266 n.4 (1968). "Assessment of counsel fees under such circumstances in no way conflicts with the primary justification for the rule against the shifting of counsel fees, namely, that the defendant should not be discouraged from fairly contesting the plaintiff's claims." Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281, 1309 (2d Cir. 1973)
 
 
 [15]
 Fee Opinion, supra note 6, 78 F.R.D. at 728-731
 
 
 [16]
 Hall v. Cole, supra note 12, 412 U.S. at 5, 93 S.Ct. at 1946, 36 L.Ed.2d at 707
 
 
 [17]
 Adams v. Carlson, 521 F.2d 168, 170 (7th Cir. 1975)
 
 
 [18]
 Exceptions to the American rule exist for "situations in which overriding considerations indicate the need for a recovery." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593, 606 (1970) (footnote omitted). Very recently, the Supreme Court warned that "(b)ecause inherent powers (to levy attorneys' fees for bad faith) are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, supra note 14, 447 U.S. at 766, 100 S.Ct. at 2463, 65 L.Ed.2d at 500 (citations omitted)
 
 
 [19]
 See, e. g., Adams v. Carlson, supra note 17, 521 F.2d at 170
 
 
 [20]
 "(O)ne should not be penalized for merely defending or prosecuting a lawsuit." F. D. Rich Co. v. United States ex rel. Industrial Lumber Co., supra note 12, 417 U.S. at 129, 94 S.Ct. at 2165, 40 L.Ed.2d at 713, quoting Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 478 (1967). And it goes almost without saying that an award is not justified merely because the court found against the party on the facts. Runyon v. McCrary, supra note 14, 427 U.S. at 183-184, 96 S.Ct. at 2600-2601, 49 L.Ed.2d at 432-433
 
 
 [21]
 Browning Debenture Holders' Comm. v. Dasa Corp., 560 F.2d 1078, 1088-1089 (2d Cir. 1977); First Nat'l Bank v. Dunham, 471 F.2d 712, 713 (8th Cir. 1971); Red School House, Inc. v. Office of Economic Opportunity, 386 F.Supp. 1177, 1193-1194 (D.Minn.1974); Baas v. Elliot, 71 F.R.D. 693, 694 (E.D.N.Y.1976). The assessment of fees may be made against the guilty attorney as well as the client. Roadway Express, Inc. v. Piper, supra 14, 447 U.S. at 767, 100 S.Ct. at 2464, 65 L.Ed.2d at 501-502. Obstinacy awards must be limited, however, to payment for work and expense attributable to bad-faith endeavors. Browning Debenture Holders' Comm. v. Dasa Corp., supra, 560 F.2d at 1089; Wright v. Jackson, 522 F.2d 955, 958 (4th Cir. 1975)
 
 
 [22]
 Fee Opinion, supra note 6, 78 F.R.D. at 729-731
 
 
 [23]
 Id. at 731
 
 
 [24]
 Id. (footnote omitted)
 
 
 [25]
 Id. at 729 (footnote omitted)
 
 
 [26]
 Id
 
 
 [27]
 See id. at 729-731
 
 
 [28]
 Id. at 730
 
 
 [29]
 Id
 
 
 [30]
 Id
 
 
 [31]
 Id. at 731
 
 
 [32]
 Brief for Appellants at 63-66
 
 
 [33]
 See Fed.R.Civ.P. 52(a) ("(f)indings of fact shall not be set aside unless clearly erroneous....")
 
 
 [34]
 "A determination of obstinacy must necessarily rest heavily on the discretion of the trial court. Factors such as the sincerity with which a party puts forth an issue cannot be judged from a cold record." Marston v. American Employers Ins. Co., 439 F.2d 1035, 1042 (1st Cir. 1971). An award of counsel fees will not be set aside on appeal save for legal error or abuse of discretion. E. g., Merola v. Atlantic Richfield Co., 493 F.2d 292, 295 (3d Cir. 1974); Swanson v. American Consumer Indus., Inc., 517 F.2d 555, 561-562 (7th Cir. 1975)
 
 
 [35]
 Fee Opinion, supra note 6, 78 F.R.D. at 728
 
 
 [36]
 Id. (citations and footnote omitted)
 
 
 [37]
 Id. at 728-729 n.4
 
 
 [38]
 Wright v. Jackson, supra note 21, 522 F.2d at 958
 
 
 [39]
 Roadway Express, Inc. v. Piper, supra note 14, 447 U.S. at 767, 100 S.Ct. at 2464, 65 L.Ed.2d at 501. "This view," the Court said, "coincides with the ruling in Link (v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)) which approved judicial power to dismiss a case not because the substantive claim was without merit, but because the plaintiff failed to pursue the litigation." Id
 
 
 [40]
 Hall v. Cole, supra note 12, 412 U.S. at 15, 93 S.Ct. at 1951, 36 L.Ed.2d at 713. There the District Court had found that the defendants in good faith believed that they had the right to take the action precipitating suit, and it was contended that an award of attorneys' fees was improper in light of that finding. The Court responded with the statement in text, adding that "as the Court of Appeals noted, the conduct of this particular litigation was marked by 'the dilatory action of the' " defendants. Id. (citation omitted)
 
 
 [41]
 Wright v. Jackson, supra note 21, 522 F.2d at 958. See also Marston v. American Employers Ins. Co., supra note 35, 439 F.2d at 1042, where a party against whom attorneys' fees were sought argued that it could not be characterized as obstinate because it had raised substantial legal and factual issues. "But," the court responded, "the fact that a defense is non-frivolous does not insulate all of a party's litigious maneuvers from a finding of obstinacy." Id. Because the party had appealed an interlocutory decree later dismissed as "patently frivolous," had endeavored to achieve the same result by moving under Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1292(b) (1976), and had delayed in moving to dismiss and in raising affirmative defenses, the court sustained an award of compensatory attorneys' fees. Id
 
 
 [42]
 The District Court, recalling "that the counterdefendants (had) in some instances been overzealous in their defenses, filing some excessive, unnecessary, or repetitious documents," gave its assurance that the award will be kept within reasonable bounds. Fee Opinion, supra note 6, 78 F.R.D. at 731-732 n.17. Procedurally, the counterdefendants will file itemized accountings and address the pertinent factors, and the Bieglers will be afforded an opportunity to respond. Id. We approve that practice. Compare Roadway Express, Inc. v. Piper, supra note 14, 447 U.S. at 766, 100 S.Ct. at 2464, 65 L.Ed.2d at 501-502